UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (BROOKLYN)

```
-----------------------------:
                             :
UNITED STATES OF AMERICA,     :  Case No.: 1:23-CR-0191
                 Plaintiff,  :  Brooklyn, New York
                             :  May 2, 2023
        v.                   :
                             :
TAESUNG KIM, DACHENG LU,      :
                 Defendants.:
-----------------------------:
```

TRANSCRIPT OF ARRAIGNMENT PROCEEDINGS
BEFORE THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Government:          UNITED STATES ATTORNEY'S OFFICE
                         EASTERN DISTRICT OF NEW YORK
                         BY:  Patrick J. Campbell, AUSA
                         271-A Cadman Plaza East
                         Brooklyn New York 11201

For Defendant:           KEVIN K. TUNG, PC
Taesung Kim              BY:  Kevin K. Tung, Esq.
                         136-20 38th Avenue
                         Flushing, New York 11354

For Defendant:           FEDERAL DEFENDERS OF NEW YORK
Dacheng Lu               BY:  Michael K. Schneider, Esq.
                         One Pierrepont Plaza
                         Brooklyn, New York 11201

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          MR. CAMPBELL:  Patrick J. Campbell for the

2     United States.  Good afternoon, Your Honor.

3          THE COURT:  Good afternoon.

4          MR. TUNG:  Kevin Tung on behalf of Taesung

5     Kim.

6          THE COURT:  Good afternoon.

7          MR. TUNG:  Good afternoon, Your Honor.

8          MR. SCHNEIDER:  Federal Defenders by Michael

9     Schneider for Mr. Lu.  Good afternoon.

10          THE COURT:  Good afternoon.

11          Mr. Kim and Mr. Lu, we are using the

12     services of interpreters to assist you in

13     understanding these proceedings.  If at any point

14     something is said that you don't understand, please

15     let me know.

16          Okay.  Mr. Lu, do you understand?

17          DEFENDANT LU:  Yes.

18          THE COURT:  Okay.  I think we need to swear

19     in the interpreters, please.  I'm not sure if they've

20     been previously sworn, but we need to have her state

21     her appearance anyway.

22          (Interpreters sworn)

23          THE INTERPRETER:  Lisa Lu, Mandarin

24     interpreter.  (Inaudible)

25          THE COURT:  All right.  Thank you very much.

1          All right.  Mr. Kim and Mr. Lu, we are here

2    today because the grand jury has returned an

3    indictment charging you in three counts.

4          The first count charges you with conspiracy

5    to commit healthcare fraud.  The second count charges

6    you with conspiracy to pay healthcare kickbacks.  And

7    the third is a money laundering conspiracy.

8          Mr. Kim, have you seen a copy of the

9    indictment?

10         DEFENDANT KIM:  Yes, I do.

11         THE COURT:  Okay.  Have you had an

12   opportunity to review it with your attorney?

13         DEFENDANT KIM:  Yes.

14         THE COURT:  Okay.

15         Mr. Tung, did you review the indictment with

16   your client and advise him of his rights?

17         MR. TUNG:  Yes, Your Honor.

18         THE COURT:  Okay.  And do you have any

19   concern about whether he understands the charges in

20   the indictment?

21         MR. TUNG:  Not at this moment in time.

22         THE COURT:  Okay.  Is he prepared to enter a

23   plea today?

24         MR. TUNG:  Yes, not guilty plea.

25         THE COURT:  To all three counts, I assume?

```
 1              MR. TUNG:  That's correct, Your Honor.

 2              THE COURT:  Okay.  And, Mr. Lu, have you

 3    seen a copy of the indictment?

 4              DEFENDANT LU:  Yes.

 5              THE COURT:  Okay.  And did you have an

 6    opportunity to review the charges with Mr. Schneider,

 7    your attorney?

 8              DEFENDANT LU:  Yes.

 9              THE COURT:  Okay.  Mr. Schneider, have you

10    reviewed the charges in the indictment, and was your

11    client advised of his rights?

12              MR. SCHNEIDER:  Yes, I have.  I will waive a

13    formal reading of the charges.  Mr. Lu will plead not

14    guilty to each of the three counts.

15              THE COURT:  Thank you.

16              Now, Mr. Kim and Mr. Lu, you have the right

17    to be represented by an attorney in connection with

18    these proceedings and all other proceedings going

19    forward in this case.

20              Now, I understand, Mr. Kim, you have

21    retained counsel, Mr. Tung, to represent you.  If,

22    for some reason, you cannot afford to pay for counsel

23    in the future, the Court will appoint an attorney to

24    represent you because you have the right to be

25    represented by counsel.  Do you understand that?
```

1          DEFENDANT KIM:  Yes.

2          THE COURT:  Okay.  And, Mr. Lu, the Court

3    has appointed Mr. Schneider to represent you for

4    purposes of these proceedings and all other

5    proceedings.

6          MR. SCHNEIDER:  Your Honor, during the

7    pre-trial interview, it became, sort of, obvious to

8    me that Mr. Lu may not qualify for appointed counsel.

9    He has not retained anyone, however.  He -- I did not

10   have him sign a financial affidavit.  I told him I

11   assumed I would be appointed for purposes of

12   arraignment and going forward with bail, but then he

13   (inaudible)

14         THE COURT:  Okay.  Thank you for that.

15         So Mr. Schneider tells me that, although

16   he's been appointed to represent you today for

17   purposes of this arraignment and bail proceeding,

18   depending upon your finances, you may be required to

19   retain your own attorney.  In other words, you do not

20   qualify financially for court-appointed counsel.  Do

21   you understand that?

22         DEFENDANT LU:  Yes.

23         THE COURT:  So that means between now and

24   your next court appearance before the District Judge

25   in this matter, you need to find yourself an

1    attorney.  Do you understand that?

2           DEFENDANT LU:  Yes.

3           THE COURT:  Okay.  But I want you to

4    understand that you are entitled to an attorney in

5    connection with all proceedings relating to these

6    charges.  Do you understand that?

7           MR. LU:  Yes.

8           THE COURT:  Okay.  I also want both of you,

9    Mr. Kim and Mr. Lu, to understand that you have the

10   right to remain silent.  What that means is that you

11   do not have to say anything relating to these charges

12   to anyone.  And, in fact, if you start to say

13   something, you can stop at any time.  I want to make

14   sure that you understand that anything you say --

15   except what you say to your attorneys, anything else

16   could be used against you in this case.

17          Do you understand that, Mr. Kim?

18   DEFENDANT KIM:  Yes.

19          THE COURT:  Mr. Lu, do you understand that?

20   DEFENDANT LU:  Yes.

21          THE COURT:  Okay.  All right.  All right,

22   let's talk -- well, first of all, when -- do we have

23   a date for the defendants to appear before Judge

24   Gonzalez?

25          MR. CAMPBELL:  Your Honor, it's been

1   reassigned to Judge Ross, and the date is June 12th.

2           THE COURT:  Okay.  All right.  So --

3           MR. CAMPBELL:  Yeah, it's -- excuse me.  I'm

4   just going to grab the time.

5           June 12th at 11:00 a.m.

6           THE COURT:  June 12 at 11:00 a.m.  Okay.

7           All right.  So let's address the question of

8   bail.  Let's start with Mr. Lu.  What's the

9   government's position with respect to bail for

10  Mr. Lu?

11          MR. CAMPBELL:  Your Honor, the government

12  agrees with Pretrial that a substantial secured bond

13  is appropriate.  The parties have a consent

14  application for a bond amount of $1 million secured

15  by the defendant's real property in Great Neck.  And

16  the government requests the additional conditions

17  recommended by Pretrial:  Defendant reports to

18  Pretrial as directed.  Travel restricted to New York

19  City and Long Island.  Surrender a passport.  Do not

20  apply for any additional travel documents.  Be

21  subject to random home and employment visits.  And

22  have no contact with co-defendants outside the

23  presence of counsel.

24          THE COURT:  Okay.  And I guess my question

25  is, is Ms. Song, his wife, in the courtroom?

1          MR. SCHNEIDER:  She is, Your Honor.  Should

2     I have her step to the podium?

3          THE COURT:  Yes, please.

4          MR. SCHNEIDER:  Your Honor, she needs a

5     Mandarin interpreter as well.

6          THE COURT:  Okay.

7          (Ms. Song sworn)

8          THE COURT:  Okay.  All right.

9          MS. SONG:  Sara Song.

10         THE COURT:  All right.  Good afternoon,

11    Ms. Song.  You can put your hand down.

12         I understand that you are here willing to

13    sign a bond on behalf of your husband, Mr. Lu.

14         MS. SONG:  Yes.

15         THE COURT:  I want to make sure you

16    understand what your responsibilities are if, in

17    fact, you do sign this bond.

18         MS. SONG:  Okay.

19         THE COURT:  The bond is in the amount of

20    $1 million.  And to secure the bond, you are going to

21    be posting your home at (address redacted).

22         MS. SONG:  Okay.

23         THE COURT:  Do you own that home with

24    Mr. Lu?

25         MS. SONG:  Yes.

```
1              THE COURT:  All right.  And do you have any
2     idea how much that home is worth?
3              MS. SONG:  1.7.
4              THE COURT:  Okay.  So if Mr. Lu decides not
5     to come back to court at any point when he's required
6     to be here, the bond will be revoked, he will be
7     rearrested, and at that point, he will be held in
8     jail until the trial on these charges.
9              MS. SONG:  Okay.
10             THE COURT:  What will happen to you if you
11    agree to sign this bond and he does not appear is
12    that the government can come after you for the amount
13    of the bond.  That's the $1 million.  What that means
14    is they can seize your home up to the $1 million
15    amount.  And if your home is not worth $1 million at
16    that time, the government can seize any other assets
17    that you might have, such as a car, bank account,
18    stocks, bonds -- anything like that -- to reach that
19    $1 million amount.
20             Do you understand that?
21             MS. SONG:  Yes.
22             THE COURT:  And if you don't have assets
23    that equal that amount, but you're working, the
24    government can garnish your wages.  What that means
25    is, every time you get your paycheck, the government
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    will automatically take a certain amount out of your

2    paycheck until that $1 million amount is reached.

3            MS. SONG:  Yes.

4            THE COURT:  Do you understand that?

5            MS. SONG:  Yeah, I understand.

6            THE COURT:  Okay.  Are you currently

7    employed?

8            MS. SONG:  Yes.

9            THE COURT:  What do you do for a living?

10           MS. SONG:  Customer care, and also billing

11   for a company.

12           THE COURT:  Okay.  And approximately how

13   much would you say you earn a year?

14           MS. SONG:  Around $10,000.

15           THE COURT:  Okay.  So you understand that,

16   by signing this bond, you're telling the Court that

17   you are willing to take responsibility for your

18   husband?

19           MS. SONG:  Yes.

20           THE COURT:  You're going to make sure that

21   he makes all of his court appearances, and if he

22   doesn't, you understand you could lose up to

23   $1 million.  Do you understand that?

24           MS. SONG:  Yes.

25           THE COURT:  Knowing all of that, are you

```
 1    willing to sign this bond on behalf of Mr. Lu?
 2              MS. SONG:  Yes.
 3              THE COURT:  Okay.
 4              So, Michelle, do you want to have her
 5    sign -- oh, actually, I probably need it back, but --
 6    while she's signing the bond, Mr. Lu, I want to make
 7    sure --
 8              MR. SCHNEIDER:  Do you want me to get the
 9    interpreter to come over?
10              THE COURT:  Yeah.  Sorry.  Okay.  Wait.
11    I'll wait until she's finished with Ms. Song.
12              So, Mr. Lu, you've heard what will happen to
13    your wife if you fail to come back to court when
14    you're required to be here.  You understand that,
15    right?  She will lose the house.
16              DEFENDANT LU:  I understand.
17              THE COURT:  Okay.  What will happen to you
18    if you don't come back to court is, as I said before,
19    you will be rearrested, and at that point, you'll be
20    held in jail until these charges are resolved.  Do
21    you understand that?
22              DEFENDANT LU:  Yes.
23              THE COURT:  You also understand that if you
24    don't come back to court, the government could bring
25    additional charges against you for the separate crime
```

1    of bail jumping.  That's a separate felony offense,

2    carries its own separate term of imprisonment.  And

3    what that means is you could actually be acquitted or

4    found not guilty of the charges in the indictment

5    and, yet, end up going to jail simply because you

6    didn't come to court when you were required to be

7    here.  Do you understand that?

8                DEFENDANT LU:  Yes.

9                THE COURT:  Okay.  You also are not to

10   commit any other crimes while on bond.  If you commit

11   a crime -- if you commit a crime while on bond,

12   that's grounds for revoking your bond, increasing

13   your punishment under the existing charges, and

14   bringing new charges against you for whatever new

15   crime you are alleged to have committed.

16                You are also not to threaten or attempt to

17   influence the testimony of any person who you think

18   might be a witness against you in this case.  If you

19   do that, that's grounds for revoking your bond,

20   increasing your punishment under the existing

21   charges, and bringing charges against you for witness

22   tampering or obstruction of justice.

23                Do you understand?

24                DEFENDANT LU:  Yes.

25                THE COURT:  Okay.  Also, as a condition of

AMM TRANSCRIPTION SERVICE - 631.334.1445

1     the bond, you are to post the property -- do we have

2     a date by which we're going to get this property

3     posted?

4              MR. SCHNEIDER:  I think we could do it by

5     Friday.

6              THE COURT:  By Friday?

7              MR. SCHNEIDER:  Yeah.

8              THE COURT:  So that's May --

9              MR. SCHNEIDER:  5th.

10             THE COURT:  -- 5th.  Okay.

11             MR. CAMPBELL:  No objection, Judge.

12             THE INTERPRETER:  Your office, your

13    assistant is going to tell him where to --

14             MR. SCHNEIDER:  We are going to tell him

15    what to do.

16             THE INTERPRETER:  Okay.  Before Friday,

17    right?

18             MR. SCHNEIDER:  Yes.  By tomorrow, we will

19    get you the documents.

20             THE INTERPRETER:  Okay.

21             THE COURT:  In addition, you must report to

22    Pretrial Services when and where they direct you.

23    You are to surrender any passports that you might

24    have.

25             Do we know --

1          MR. SCHNEIDER:  Passport was seized by

2     agents this morning.

3          THE COURT:  Okay.  But I'm going to order

4     you not to apply for any new passport or travel

5     documents until these charges are resolved.  Do you

6     understand that?

7          DEFENDANT LU:  Yes.

8          THE COURT:  Your travel is restricted to

9     New York City and Long Island.  If you have to go

10    somewhere else, you need to get permission first from

11    Pretrial Services.  Do you understand that?

12         DEFENDANT LU:  Yes.

13         THE COURT:  Okay.  Also, you are not to have

14    any contact with your co-defendant, Mr. Kim, or any

15    victims or potential witnesses.

16         Mr. Schneider, are you aware of who those

17    might be, or if there's some arrangement that the

18    government is going to give you a list of those

19    people?

20         MR. SCHNEIDER:  We -- I have not discussed

21    it aside from -- I don't have a list of unindicted

22    co-conspirators.  But if they want to give me a list,

23    I can share it with Mr. Lu.

24         MR. CAMPBELL:  We can do that, Your Honor.

25         THE COURT:  Okay.  All right.  Thank you.

```
 1              And, finally, there's another provision in
 2     the Pretrial -- which I don't see on the bond, so I
 3     don't know if it's been discussed, and that is that
 4     he is to refrain from filing any claims, directly or
 5     indirectly, to the Medicare and/or Medicaid programs.
 6     Was that something that was addressed?
 7              MR. SCHNEIDER:  I agree to any conditions
 8     that were recommended by Pretrial.
 9              THE COURT:  Okay.  I'm just going to add
10     that at the bottom.
11              All right.  Have I missed any provisions?
12              MR. CAMPBELL:  No, Your Honor.  Just two
13     requests; one, that we ask that the portion of the
14     transcript referencing his specific address be
15     sealed.  And second, we understand him to be a
16     citizen of the People's Republic of China.  Just so
17     the record is clear, notice was given this afternoon.
18              THE COURT:  Okay.  So the transcript with
19     his address shall be sealed.  And maybe we can get
20     his signature.
21              While she's doing that, Counsel, do you want
22     to tell me what the government's position is with
23     respect to Mr. Tung -- Mr. Kim?  Sorry.  Excuse me.
24              MR. CAMPBELL:  Your Honor, as outlined in
25     our submission dated today, which was provided to
```

1    defense counsel in the court, we are seeking

2    detention.  I am in receipt of the Pretrial Services

3    report, which I think raises some additional

4    questions.

5         The government's principal concern is the

6    weight of the charges, the weight of the evidence

7    here, and particularly the defendant's access to

8    substantial assets and cash.  It was a central part

9    of the scheme that significant amounts of

10   reimbursement from these pharmacies was turned into

11   cash.  And so our concern is that there are

12   undisclosed assets that the government is not aware

13   of.

14        As we pointed out, the home he's currently

15   residing in was moved shortly after a series of

16   searches were conducted in December.  We have some

17   concerns that the information given to Pretrial is

18   incomplete.  It does not appear that he had

19   acknowledged his work at the pharmacies that are part

20   of the charge scheme or any related pharmacies and

21   entities.  He declined to discuss his financials at

22   all.

23        And with respect to his wife, who he reports

24   as a housewife, she is the record owner of several of

25   these pharmacies, and is also a signatory on several

1    of the bank accounts.

2              So, from our view, we feel he's a

3    substantial flight risk.  He had travel plans this

4    week to Korea.  And as we pointed out in our letter,

5    we've also obtained information from several

6    witnesses who proffered with the government that

7    there have been attempts to influence their testimony

8    and implicitly suggest that they should not speak to

9    the government.

10             So for those reasons, we also feel he poses

11   a danger to the community and, potentially, witnesses

12   in this case.

13             THE COURT:  All right.  Mr. Tung, I assume

14   you have seen the government's submission?

15             MR. TUNG:  Yes, Your Honor, and I do have

16   response -- responses.  Okay.

17             First of all, that my client immigrated into

18   the United States in 1995, and he has settled with

19   his family.  His children are settled in the United

20   States for close around 30 years, right?  Close to 30

21   years.  And all of his members, all of his community

22   ties are in the United States.  There is no risk of

23   flight.  And he has nothing to do -- I mean, he

24   wouldn't have anything -- any connections in Korea,

25   which -- South Korea, where he emigrate from.

1        And the government raises concern that he

2   might go in -- go back to his country or other --

3   outside of country.  But, Your Honor, I have to point

4   it out to you, my client was aware of the

5   investigation since last year.  He was subpoenaed to

6   appear before grand jury to give testimony.  And I

7   remember because I was the attorney to represent the

8   company just to coordinate with government for

9   providing testimony with grand jury.  And the

10  government scheduled him to appear before grand jury

11  to give testimony.  And, however, it was the

12  government who canceled the appearance before grand

13  jury to give testimony.

14        Now, this is good indication for my client

15  because he never intended to -- all I'm saying is he

16  never intend to flee.  He wanted to come in to give

17  his side of story, to give -- at that time, of

18  course, there's no allegations against him yet, but

19  while he voluntary -- no, while he under the

20  subpoena, he wanted to go to court to tell the grand

21  jury his side of the story.  Then government changes

22  their side stories.

23        So what I'm saying, he wants to defend

24  himself in this country.  He's not going to go away.

25        And also, Your Honor, I have to point it out

1  to you, since last year, he, at least, left the

2  country twice for business trip, and he knew he was

3  under investigation and with potential charges

4  against him.  But he never -- he returned to the

5  country, to United States, and -- because he wanted

6  to defend himself.  The allegations contained in the

7  information or complaint here is not entirely true.

8          And, Your Honor, you also heard in the

9  report -- in the letter address the Court by the --

10  by the government that told you about lots and lots

11  of documentations.  Now, Your Honor, yes, the

12  pharmacies -- nine pharmacies or eleven pharmacies --

13  whatever the number, there are lots of

14  documentations.  Your Honor, the only time for my

15  client can provide meaningful defense and effective

16  defense is to go through these documentations.  And

17  he would be the only person to find, to locate the

18  documentations to defend himself.

19          Now, if he's incarcerated, that's almost

20  impossible for us -- for me to go to jail to meet him

21  with all these documentations he can search.

22          So, Your Honor, when we're balancing the

23  risks to flee and effective defense, I think he

24  should be released similar to the co-defendant, with

25  a similar conditions to co-defendant.  And you

1   also -- Your Honor, I also have to get Court's
2   attention that the defendant health condition is not
3   that great.  He suffers cholesterol, so he needs
4   constant medications.  Now, who can do this better?
5   If he's home, he can receive medications.  And if we
6   have -- if we have any problems, emergencies, he can
7   go to doctor's office, but that's another condition
8   I'm asking the Court to consider.
9           Now, as to the nature of the case, Your
10  Honor, this is not a violent case.  It's not a
11  drug-involved violent case.  It is white collar case,
12  you know, so there's no signs of any danger posed to
13  the society at whole.  Government just talk about
14  that the -- allegedly, he said the defendant's --
15  similar conditions with the co-defendant and him,
16  right, contact the witnesses.
17          But, Your Honor, the government did not
18  really specify how they threat the witnesses.  How --
19  what kind of violent, you know, acts?  Is it, okay,
20  I'm going to killing you?  I'm going to kill you if
21  you say something?  Nothing being specifically
22  proffered here.  And also, there's no time frame
23  where, when.  So these are just allegations, Your
24  Honor.  It's really something that can made up here.
25          Your Honor, I have to point it out to the

1  Court that those so-called witnesses, they were

2  either partners to the business or employees to the

3  business.  There was no court order which restrict

4  them to contact those witnesses.  When they contact

5  them, we do not know what the conversation is

6  exchanged.  It could be their business, normal

7  business.

8         Now, even if these witnesses may have come

9  into court to testify or given some information to

10  the government, if my client ask what's the status,

11  you know, things like that, I thought they are all

12  legitimate.  At least, the government has to provide

13  law, right, with what kind of language or specific

14  sentences or wordings exchanged between the

15  defendants and those witnesses.

16         So, Your Honor, I have to let the Court

17  know, I mean, the Court has to give very little

18  weight on those argument.  And there's clearly no

19  indication they threaten those witnesses, you know,

20  if they give testimony to government or if they

21  should do something and they will do some violent

22  acts against those, I mean, witnesses.

23         In all fairness, Your Honor, I think the

24  Court, at least, should give defendant, Mr. Kim, the

25  same kind of treatment, same kind of bail conditions.

1    And we can offer a real property that is deed under

2    my client's name and his wife's name in Hawaii.  And

3    I have the address if the Court is -- if the Court

4    would like to know what about this property to

5    bond -- as a security to that $1 million bond the

6    government is searching for in the co-defendant case.

7    And all the other conditions, Your Honor, we'll agree

8    to as you outlined before.

9         THE COURT:  Can I just ask you, Counsel,

10   what is the estimated value of the property in

11   Hawaii?

12        MR. TUNG:  The estimated value of that

13   property is $900,000, so it's close to $1 million.

14   And if my client failed to show up in court, you

15   know, the -- it will be government's property.  And

16   we can do similar signing over the deed before Friday

17   because it's under the name of the wife's name and

18   defendant's name.

19        MR. CAMPBELL:  May I be heard, Your Honor?

20        THE COURT:  Yes.  Go ahead.

21        MR. CAMPBELL:  Just to address some of these

22   points so the record is clear, the defendant was

23   never served with a grand jury testimony, nor was

24   he -- a grand jury subpoena, nor was he identified as

25   a target of the investigation.  So whatever he

1    assumed was exactly that, his assumption.  I think

2    it's fair to say that the circumstances have changed

3    now.  He's been indicted and is facing three felony

4    counts with substantial guidelines estimate of

5    imprisonment should he be convicted.

6              The circumstances are just, frankly,

7    different than he's portraying them prior to being

8    indicted.  And the heart of defense counsel's points

9    doesn't really address the concerns here.  He alluded

10   to the fact that there are nine pharmacies that this

11   defendant is associated with or owns, yet none of

12   that was disclosed to Pretrial.  At most, he says

13   that he had some past work experience as a manager of

14   the pharmacies.  He hasn't disclosed any financial

15   assets.  If it -- we take defense counsel at his word

16   that he had nine pharmacies, he has substantial

17   access to cash, which was a significant part of this

18   scheme.

19             And with respect to it not being a violent

20   case, while that's true, at this point, we're

21   permitted to proceed by proffer.  We feel that the

22   threats and witness contacts are credible and have

23   been confirmed by multiple witnesses.  If the Court

24   requests something more detailed, I'm happy to

25   provide it ex parte, but given the nature of the

1    message conveyed from the defendant to the individual

2    and protecting the individual's identity, I'm not

3    prepared to do that in open court.

4          THE COURT:  But, Counsel, in your letter,

5    you have answered one of the concerns, which is

6    Mr. Tung said there was no time frame.  Your letter

7    suggests that these contacts have been over the past

8    several months; is that true?

9          MR. CAMPBELL:  That's correct.

10         THE COURT:  Okay.  And the witnesses have

11    indicated to the government that these were not

12    simply legitimate business discussions that they were

13    having with Mr. Kim, that they have told you, at

14    least, that they were being -- or he was attempting

15    to dissuade them from speaking with the government.

16    Is that a fair characterization of what your concerns

17    are?

18         MR. CAMPBELL:  That is fair, Your Honor.

19         THE COURT:  Okay.  All right.  Anything else

20    that you want to address at this point?

21         MR. CAMPBELL:  Not for the government, Your

22    Honor.

23         THE COURT:  Okay.

24         MR. TUNG:  Your Honor, if government says

25    that my client has nine pharmacies or eleven

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    pharmacies and lots of pharmacy stores and -- that is

2    assets my client cannot move, and that's kind of

3    supporting our argument.  His business is here in the

4    United States.  He cannot take those business away.

5          But in the meantime, Your Honor, I just

6    heard from my client.  He said all these pharmacy

7    stores are closed because of dramatic reduction in

8    business because of the investigation.  When the

9    investigation started, employees got scared, left.

10   They cannot find replacement of employee who wants to

11   work for a pharmacy which is under government

12   investigations.  And they lost customers because, as

13   far as they know, the other stores, they're still

14   doing the same.  I mean, whatever the allegations

15   are, kickbacking.  And their stores are not doing

16   this.  So they don't have any business.  That's

17   another good sign to indicate that our clients are

18   innocent in this -- in a sense.

19         And, Your Honor, when they're talking about

20   talking to the witnesses, I must stress, you know,

21   this -- those are business partners.  Why can't they

22   talk about business?  I mean, why can't they talk

23   about the status of the investigations and the

24   government allegations, I mean, proffered here is --

25   does not even meet the threshold.  So I'm -- Your

1    Honor, and the complaint itself is addressed to both

2    defendants.  Why one defendant shall be treated with

3    different conditions?

4            THE COURT:  Well, were there any complaints

5    about Mr. Lu attempting to dissuade people from

6    discussing things with the government?

7            MR. CAMPBELL:  Your Honor, as we put in our

8    letter, some of these contacts did come through

9    Mr. Lu.  Our understanding from witnesses is that it

10   is at the direction of Mr. Kim.  They have different

11   roles in the scheme.  We see Mr. Kim as having more

12   of a controlling role in the scheme.

13           THE COURT:  Well, okay, I guess what I'm

14   going to do is I'm going to order him detained.  At

15   this time, I think there are substantial factors here

16   that lead me to conclude that he is a very serious

17   flight risk.

18           I understand your argument that his family

19   is all here in the United States, but he does have

20   ties to South Korea.  He was planning on going there,

21   in fact.  I do think that the circumstances that

22   existed when he left before and came back are

23   different.  Now, he's facing 10- and 20-year maximum

24   sentences under these charges.

25           I'm concerned about the government's

1    statement that he transferred assets to his wife.

2    And I am very concerned about the attempts to

3    persuade witnesses not to discuss things with the

4    government, regardless of whether or not there was a

5    specific court order.  So I'm going to order him

6    detained pending trial.

7            But that being said, you can always come

8    back to the Court if you want to make another effort

9    to come in with a more substantial package.  With all

10   of the monies that the government alleges were

11   siphoned out of these pharmacies, the $900,000

12   property in Hawaii is not -- simply not enough

13   security under any set of circumstances.  So I'm

14   ordering him detained and --

15           MR. TUNG:  Your Honor, can I be heard?

16           THE COURT:  You can be heard.

17           MR. TUNG:  Yes, I know you're not going to

18   change your mind, but I'm just asking, Your Honor,

19   government just said we can have a hearing on that

20   issue speaking to -- talking to co-defendants not to

21   speak with government, right?  So that -- I think,

22   you know, these are business partners.  If upon the

23   hearing, Your Honor, you -- after the hearing, if you

24   hear different testimony from the people who

25   allegedly threatened, maybe we can -- that will be

1    another consideration that the Court can reconsider

2    the bail condition.  Otherwise, you know, I won't

3    come back unless there is a material change of the

4    circumstances.  I wouldn't have anything else.

5            But the government says they can do a

6    hearing.  I think it's fair for the defendant to be

7    entitled to that hearing to determine if he did

8    threaten, he did talking to them, not to talk to

9    government.

10           MR. CAMPBELL:  Your Honor, I was not

11   requesting they were offering a hearing.  I was

12   offering to provide additional information ex parte

13   should the Court want to hear it.

14           THE COURT:  That's what I thought you were

15   saying.  I don't think he was offering a hearing, and

16   I'm not sure that it's appropriate to have a hearing

17   at this point in time, but --

18           MR. TUNG:  Your Honor, can the defendant

19   request in the near future such a hearing be

20   scheduled so we can determine if that's the

21   situation, that he contacted the co-defendants.  And

22   in addition, Your Honor, you said if we can come back

23   with more securities -- I think -- I read the letter.

24   There's another property that was allegedly

25   transferred to his son in New York.  Now, that

1   property, that's his residence.

2         Now, if I can talk to his family and they

3   are willing to put up a second real property, Your

4   Honor, would you consider -- reconsider in the

5   future, or would you consider now, if they're willing

6   to put up a second property, doubling -- maybe that

7   will be $2 million now for the bond.

8         THE COURT:  Well, given the nature of the

9   offense and the allegation that there was $29 million

10  involved, I'm not sure that another $1 million is

11  going to make me feel any better here.  There's an

12  awful lot of cash, according to the government,

13  that's floating around right now.

14        Look, I am not about to tell you yes or no

15  if you come back with a specific property.  All I'm

16  saying is, I'm giving you the right to come back, and

17  you can make your best bail pitch at that time.  But

18  I'm not going to -- I'm not going to tell you what

19  will or will not satisfy the Court; okay?

20        MR. TUNG:  Would you order a hearing, at

21  least, Your Honor, in near future, for that

22  allegations against my client for telling other

23  people not to be talk with --

24        THE COURT:  I mean, if you want to insist on

25  this, I'll ask the government to submit something to

1      the Court in-camera.  And if, upon review, it appears

2      that a hearing is appropriate, then we'll schedule a

3      hearing.  But the first step would be to have the

4      government submit something with more detail to the

5      Court.  If the Court determines that the proffer from

6      the government is sufficient without the need for a

7      hearing, then no hearing will be ordered.

8                  MR. TUNG:  That's fair, Your Honor.

9                  THE COURT:  Okay?

10                 MR. TUNG:  What's the deadline for the

11     government to provide that, the information?

12                 THE COURT:  Counsel, when can you get that

13     to the Court?

14                 MR. CAMPBELL:  Close of business tomorrow,

15     Your Honor.

16                 THE COURT:  Okay.  That's fine.

17                 MR. CAMPBELL:  Just to be clear, Your Honor,

18     that's an in-camera ex parte submission?

19                 THE COURT:  Yes, it is.

20                 MR. CAMPBELL:  Thank you, Judge.

21                 THE COURT:  Okay.  I, now, also have the

22     issue of an order of excludable delay.  As I think it

23     was mentioned earlier, the defendants are to appear

24     before Judge Ross on June 12th.  And I've been asked

25     to exclude time under the Speedy Trial Act for the

1   exchange of discovery, and I assume for plea

2   negotiations.

3          So, Mr. Schneider, have you discussed this

4   with Mr. Lu, your client?

5          MR. SCHNEIDER:  Yes, I have, Your Honor.

6   Another reason is to allow Mr. Lu to seek counsel

7   (inaudible) sorry -- from Speedy Trial calculations.

8          THE COURT:  All right.  And, Mr. Tung, what

9   does your client wish to do?

10          MR. TUNG:  Your Honor, since my previous

11   understanding, when I was reading the Pretrial

12   report, I thought that my client will be released

13   today.  Now, of course, you know, we're not going to

14   consent to the time to be excluded.  We want to have

15   a trial as soon as possible because he's detained.

16          MR. CAMPBELL:  Your Honor, the government

17   feels the exclusion is appropriate in light of the

18   fact that discovery has not been produced.  It will

19   need to be produced and reviewed.  And the government

20   may engage in plea discussions with the defendant to

21   resolve the case short of trial pending the review of

22   discovery.  So for those reasons, we would move over

23   their objection to exclude time.

24          THE COURT:  I mean, you, yourself, argued

25   that there was a lot of paperwork and discovery that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   you would need to look at in order to adequately

2   represent your client.  I'm not quite sure why

3   excluding time for this short period is problematic,

4   but if you are refusing, I will order the exclusion

5   over your objection.

6          MR. TUNG:  That's fine, Your Honor.  All I'm

7   expressing that my concern is that he's retained --

8   he's detained.

9          THE COURT:  And I understand that.  And then

10  you have the option to come back to the Court, as I

11  indicated.  But in the meantime, you're whittling

12  away the 70-day time period for trial.  That's all

13  I'm saying.  But if that's what you wish to do, I

14  will order it over your objection, and you can appeal

15  me to Judge Ross, okay?

16         All right.  Anything else today?

17         MR. CAMPBELL:  Not for the government, Your

18  Honor.

19         THE COURT:  All right.  Anything else,

20  Mr. Tung?  Counsel?

21         MR. TUNG:  No, Your Honor.

22         THE COURT:  Mr. Schneider, Anything else?

23         MR. SCHNEIDER:  No.  Thank you.

24         THE COURT:  All right.  Thank you.

25                  C E R T I F I C A T E

1

2       I, Adrienne M. Mignano, certify that the

3   foregoing transcript of proceedings in the case of

4   United States v. Taesung Kim and Dacheng Lu,

5   Docket #23CR191 was prepared using digital

6   transcription software and is a true and accurate

7   record of the proceedings.

8

9

10  Signature    _Adrienne M. Mignano__

11               ADRIENNE M. MIGNANO, RPR

12

13  Date:       May 2, 2023

14

15

16

17

18

19

20

21

22

23

24

25