

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DJ:PJC
F. #2021R00440

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 11, 2023

<u>By ECF</u>

The Honorable Allyne R. Ross
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Terry Kim
>        <u>Criminal Docket No. 23-191 (ARR)</u>

Dear Judge Ross:

   The government respectfully submits this letter to notify the Court regarding a potential conflict involving Kevin Tung, Esq., who represents the defendant Terry Kim.

   The conflict arises from Mr. Tung's prior representation of the defendant's co-conspirators Linzhe Kong, also known as Justin Kong, and Na Young Kim, and the defendant's co-defendant, Dacheng Lu, also known as Bruce Lu.  The government understands that Mr. Tung previously represented Terry Kim, Na Young Kim, and Kong in connection with the government's issuance of a grand jury subpoena to entities with which those individuals are affiliated.  On approximately February 20, 2023, Mr. Tung attempted to schedule separate proffers with the government for each of these individuals, during which he planned to attend and represent them.  The government advised Mr. Tung of the conflict issue, and accordingly, declined to meet with Mr. Tung and his clients.  On the day of co-defendant Lu's arrest, defendant Lu informed agents he was represented by Mr. Tung.  The government understands that Mr. Tung no longer represents Na Young Kim, Kong, or Lu, who each now have their own counsel.

   The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982).  <u>See, e.g.</u>, <u>United States v. Stantini</u>, 85 F.3d 9, 13 (2d Cir. 1996); <u>United States v. Malpiedi</u>, 62 F.3d 465, 467 (2d Cir. 1995).

I.     <u>Applicable Law</u>

A.     <u>Overview</u>

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. <u>See</u> <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981); <u>United States v. Perez</u>, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. <u>See</u> <u>United States v. Jones</u>, 381 F.3d 114, 119 (2d Cir. 2004); <u>United States v. Locascio</u>, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." <u>Jones</u>, 381 F.3d at 119 (citing <u>Locascio</u>, 6 F.3d at 931); <u>see also</u> <u>Wheat v. United States</u>, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." <u>United States v. Levy</u>, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." <u>Jones</u>, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." <u>Id.</u> (emphasis and citations omitted).

1.     <u>Mandatory Disqualification</u>

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. <u>See</u> <u>United States v. Lussier</u>, 71 F.3d 456, 461-62 (2d Cir. 1995). Such <u>per se</u> conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. <u>United States v. Williams</u>, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

2.     <u>Discretionary Disqualification</u>

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." <u>Wheat</u>, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." <u>Locascio</u>, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." <u>United States v. DiPietro</u>, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing <u>Wheat</u>, 486 U.S. at 163).

3.      Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

B.      Prior Representation of Co-Conspirators and a Co-Defendant

An attorney's representation of co-conspirators and a co-defendant presents an inherent conflict of interest. A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other clients. See Locascio, 6 F.3d at 931; United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to

3

him by reason of the confidential relationship, absent release from that duty under the law.  See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment.").  Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest."  Yannotti, 358 F. Supp. 2d at 295.  Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm.  E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

       That means that, in representing a current client, a lawyer may not use privileged information obtained from another client.  See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982).  Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury.  See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

       The duty of loyalty to his other clients thus effectively precludes a lawyer from vigorously cross-examining the other clients or commenting on their credibility, which may be essential to the effective representation of the present client.  See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" — a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

       Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator.  See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)).  The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client."  United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003).  Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

4

III.    The Government's Proposal

The government respectfully submits that Mr. Tung's prior representation of Na Young Kim, Kong, and Lu gives rise to a potential conflict of interest, but that, in view of the nature of the conflict, Terry Kim can waive his rights and continue to be represented by Mr. Tung if his waiver is knowing and voluntary.

The government therefore respectfully submits that the Court should conduct a Curcio inquiry to ensure Terry Kim's waiver of the conflict is knowing and voluntary. Specifically, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorney has previously represented individuals the government has identified as your co-conspirators. Your attorney has certain ethical obligations to these other clients. For example, it might be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on his other clients.
>
> Your attorney also may have privileged information from his other clients that could assist in your defense but that he could not disclose because of his ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crime charged against you or your relationship with your coconspirators, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he may have obtained from his other clients.
>
> There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has represented other clients in matters related to this case. No one can foresee every possible conflict of interest.
>
> Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?
>
> You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorney, you will be giving up that right. Do you understand that?
>
> Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney.  Do you understand that?

You are not under any pressure to make a decision about this right now.  You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

IV.   Conclusion

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio.  The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:   _____/s/_____
Patrick J. Campbell
Trial Attorney, Fraud Section
Criminal Division
U.S. Department of Justice
(718) 254-6366

cc:   Kevin Tung, Esq.
Clerk of Court (ARR) (by email)